

**FILED**
4/29/2021
RP

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **1:21-cr-00272** |
| | ) | |
| v. | ) | Violations: Title 18, United States |
| | ) | Code, Sections 1343 and 1957 |
| RICARDO MUNOZ | ) | |

**Judge John F. Kness**
**Magistrate Judge M. David Weisman**

## COUNT ONE

The SPECIAL JANUARY 2020 GRAND JURY charges:

1.     At times material to this indictment:

### Relevant Entities and Individuals

a.     The City of Chicago was a unit of local government known as a municipal corporation, and a political subdivision of the State of Illinois.

b.     The City of Chicago's legislative branch of government was the Chicago City Council, which comprised fifty City Council members, each of whom represented one of Chicago's fifty wards, and who were also known as Aldermen.

c.     Defendant RICARDO MUNOZ was Alderman of the 22nd Ward in Chicago between in or around 1993 and in or around May 2019.

d.     The Progressive Reform Coalition of the Chicago City Council, which at various times was also referred to as the Chicago Reform Caucus and the Chicago Progressive Reform Caucus (hereinafter the "Chicago Progressive Reform Caucus" or "CPRC"), was a non-profit organization whose voting membership consisted of certain aldermen. The CPRC paid contractors to assist in carrying out its mission.   The CPRC formed a political action committee under Illinois law.

e.     According to its bylaws and Statement of Principles, the purpose of the CPRC was to "creat[e] a more just and equal Chicago, combatting all forms of discrimination and advancing public policies that offer genuine opportunity to all Chicagoans."

f.     MUNOZ was the chairman, and performed the duties of treasurer, of the CPRC. MUNOZ was authorized to expend CPRC funds to promote the purposes of the CPRC.

g.     The CPRC had a checking account, ending in 2725, at what is now known as JPMorgan Chase Bank, N.A. ("Chase") in Chicago, Illinois (the "CPRC account"). MUNOZ was an authorized signer on, and was issued a debit card ending in 2333 (the "CPRC debit card"), for this account. MUNOZ had online banking access to the CPRC account using a unique username and password.

h.     Citizens for Munoz ("CFM") was a candidate political committee under Illinois law whose purpose was to support the candidacy of MUNOZ for elected office. CFM had a checking account, ending in 2190, at Chase (the "CFM account"). MUNOZ had online banking access to the CFM account using a unique username and password.

i.     MUNOZ had a personal checking account in his name, ending in 7686, at Chase (the "Munoz personal account"). MUNOZ was an authorized signer on this account. MUNOZ had online banking access to the MUNOZ personal account using a unique username and password.

2

j.      MUNOZ and a family member had a joint checking account, ending in 3488, at Chase (the "Munoz joint account").   MUNOZ was an authorized signer on this account.   MUNOZ had online banking access to the MUNOZ joint account using a unique username and password.

k.      Chase offered a person-to-person payment service, known as "Quickpay," that allowed its customers to electronically send or receive funds using an email address or mobile telephone number.

l.      Individuals A and B were paid as contractors to perform services for the CPRC.

m.      Individual C assisted in the preparation of reports filed with the Illinois State Board of Elections ("SBE") on behalf of the CPRC and CFM.

n.      Company D was a Rhode Island-based company that was paid to assist in the preparation and filing of reports with the SBE on behalf of the CPRC and CFM.   Individual D worked for Company D in Rhode Island and handled the CPRC and CFM accounts.

o.      Individual E was a member of MUNOZ's family who attended University E, which was located outside of Illinois.

**Illinois Law Regarding Campaign Expenditures and Receipts**

p.      Between in or around 2016 and in or around 2019, there was in force and effect statutes of the State of Illinois relating to political action committees

3

and candidate political committees, including the CPRC and CFM, namely, Chapter 10 of the Illinois Compiled Statutes ("ILCS"), Sections 5/9-1.8(a), 5/9-8.10, and 5/9-11.

q. Under Illinois law, the CPRC was prohibited from making expenditures "[f]or payments to a public official . . . or his or her family member unless for compensation for services actually rendered by that person;" "for an individual's tuition or other educational expenses, except for governmental or political purposes directly related to a candidate or public official's duties and responsibilities;" and "for the travel expenses of any person unless the travel is necessary for fulfillment of political, governmental, or public policy duties, activities, or purposes." 10 ILCS §§ 5/9-1.8(a), 5/9-8.10(a)(11), 5/9-8.10(a)(10), 5/9-8.10(a)(6). The SBE was authorized to investigate violations of these provisions.

r. Under Illinois law, the CPRC was also required to file with the SBE quarterly Reports of Campaign Contributions and Expenditures, known as D-2s, which had to disclose, among other things, "the full name and mailing address of each person who has made one or more contributions to the [CPRC] within the reporting period in an aggregate amount or value in excess of $150 and the amounts and dates of those contributions;" and "the full name and mailing address of each person to whom expenditures were made by the [CPRC] within the reporting period in an aggregate amount or value in excess of $150 [and] the amount, date, and purpose of each of those expenditures." 10 ILCS § 5/9-11(4), (12).

4

s. When filing D-2s, the CPRC was required to verify that a D-2 filed with the SBE was "a true, correct and complete report." The SBE had the authority to investigate and assess civil penalties for the willful filing of false or incomplete D-2s.

2. From in or around October 2016, and continuing until in or around June 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

RICARDO MUNOZ,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property of the CPRC by means of materially false and fraudulent pretenses, representations, and promises, and concealment of materials facts, which scheme is further described below.

3. It was part of the scheme that MUNOZ, without authorization from the CPRC, converted funds belonging to the CPRC to his own personal use and benefit, and made and caused to be made materially false representations in communications to staff members and contractors of the CPRC and in D-2s in order to conceal the scheme from the CPRC, its membership, and the SBE.

**Payment of Tuition for a Family Member with CPRC Funds**

4. It was further part of the scheme that, on or about October 31, 2016, without authorization from the CPRC, MUNOZ caused an electronic transfer of $16,000 from the CPRC account to the Munoz joint account, intending to use the funds to make a tuition payment for Individual E.

5

5.    It was further part of the scheme that, on or about October 31, 2016, MUNOZ caused an electronic transfer of $15,254 from the Munoz joint account to the bank account of University E to make the tuition payment.

6.    It was further part of the scheme that, on or about December 5, 2016, after having received the proceeds of a loan, MUNOZ caused an online transfer of $16,000 from the Munoz personal account into the CPRC account.

7.    It was further part of the scheme that, in order to conceal his misappropriation of funds from the CPRC account to make the tuition payment, on or about January 17, 2017, MUNOZ falsely told Individual C in an email that the October 31, 2016 electronic transfer of $16,000 from the CPRC account to the Munoz joint account did not need to be reported on the CPRC's D-2 for the fourth quarter of 2016 (the "1-17-17 CPRC D-2") because the money had been deposited back into the CPRC account in the same quarter.

8.    It was further part of the scheme that, on or about January 17, 2017, MUNOZ caused Individual C to forward the above-referenced email to Individual D in order to induce Individual D not to report the October 31, 2016 electronic transfer of $16,000 from the CPRC account to the Munoz joint account on the 1-17-17 CPRC D-2.

9.    It was further part of the scheme that, on or about January 17, 2017, MUNOZ caused to be falsely represented on the 1-17-17 CPRC D-2 that the D-2 was "true, correct and complete," knowing that the form did not report the October 31,

6

2016 electronic transfer of $16,000 from the CPRC account to the Munoz joint account.

### Electronic Transfers of CPRC Funds Directly to the Munoz Personal Account

10. It was further part of the scheme that on or about October 10 and October 29, 2018, without authorization from the CPRC, MUNOZ caused electronic transfers of $5,000 and $2,100, respectively, to be made from the CPRC account to the Munoz personal account, intending to use those funds for his own personal use and benefit.

11. It was further part of the scheme that, on or about October 10, 2018, MUNOZ created a new Gmail email account so that he could personally receive payments via Chase's Quickpay payment system; on that same date, MUNOZ caused $5,000 to be sent electronically from the CPRC account to this Gmail email account, but in doing so, MUNOZ made it falsely appear that Individual A was the intended recipient of this funds transfer.

12. It was further part of the scheme that, by the above means, MUNOZ caused to be falsely represented on the D-2 filed on behalf of the CPRC on or about January 15, 2019 (the "1-15-19 CPRC D-2") that the CPRC had paid $5,000 to Individual A on October 12, 2018 for the purpose of "Consulting."

7

13.     It was further part of the scheme that MUNOZ spent substantially all the proceeds of the $5,000 and $2,100 electronic transfers for his own personal use and benefit.

**Transfers of CPRC Funds Funneled through the CFM Account**

14.     It was further part of the scheme that, on or about October 26, 2018, without authorization from the CPRC, MUNOZ caused an electronic transfer of $2,300 from the CPRC account to the CFM account, and on the same day, caused an electronic transfer of $2,300 from the CFM account to the Munoz personal account, intending to use the funds for his own personal use and benefit.

15.     It was further part of the scheme that MUNOZ spent substantially all the proceeds of the $2,300 for his own personal use and benefit.

16.     It was further part of the scheme that, for the purpose of concealing and preventing the detection of the scheme, on or about January 15, 2019, MUNOZ falsely told Individual C in an email sent at approximately 4:45 p.m. (the "1-15-19 A email") that the $2,300 had been used for "Election Day expenses," when MUNOZ knew he had spent substantially all the funds for his own personal use and benefit.

17.     It was further part of the scheme that, on or about January 15, 2019, MUNOZ caused Individual C to forward the 1-15-19 A email to Individual D at approximately 5:27 p.m. (the "1-15-19 B email") in order to induce Individual D not to report the electronic transfer of the $2,300 from the CFM account to the Munoz personal account on CFM's D-2 for the fourth quarter of 2018.

8

18.     It was further part of the scheme that on or about December 10, 2018, without authorization from the CPRC, MUNOZ caused an electronic transfer of $500 from the CPRC account to the CFM account, intending to use those funds for his own personal use and benefit.

19.     It was further part of the scheme that on or about December 12, 2018, without authorization from the CPRC, MUNOZ caused an electronic transfer of $400 from the CFM account to an individual for payment of a personal expense.

### Cash Withdrawals of CPRC Funds

20.     It was further part of the scheme that, without authorization from the CPRC, MUNOZ made cash withdrawals in the approximate amounts listed below from the CPRC account on or about the dates listed below, intending to use those funds for his own personal use and benefit:

| Date | Amount |
| --- | --- |
| November 3, 2018 | $4,000 counter withdrawal |
| November 21, 2018 | $1,960 counter withdrawal |
| November 23, 2018 | $2,000 counter withdrawal |
| November 24, 2018 | $1,000 ATM withdrawal |
| November 25, 2018 | $1,000 ATM withdrawal |
| December 7, 2018 | $600 ATM withdrawal |

9

**Concealment of Electronic Transfers and Cash Withdrawals**

21.     It was further part of the scheme that, for the purpose of concealing and preventing the detection of the scheme, on or about January 15, 2019, MUNOZ falsely told Individual C in the 1-15-19 A email that the $2,100 transfer from the CPRC account to the Munoz personal account (referred to in paragraph 10), and the $4,000, $1,960, $2,000, $1,000, $1,000, and $600 cash withdrawals out of the CPRC account (referred to in paragraph 20) did not need to be reported on the 1-15-19 CPRC D-2 because the funds had been transferred out and then back into the CPRC account during the same quarter when MUNOZ knew that the funds had not been deposited back into the CPRC account.

22.     It was further part of the scheme that, on or about January 15, 2019, MUNOZ caused Individual C to forward the 1-15-19 A email to Individual D in order to induce Individual D not to report the electronic transfer of $2,100 and the cash withdrawals on the 1-15-19 CPRC D-2.

23.     It was further part of the scheme that, by the above means, MUNOZ caused to be falsely represented on the 1-15-19 CPRC D-2 that the D-2 was "true, correct and complete," knowing that the D-2 did not report the $2,100 transfer from the CPRC account to the Munoz personal account or the $4,000, $1,960, $2,000, $1,000, $1,000, and $600 cash withdrawals out of the CPRC account.

10

## Purchases with the CPRC Debit Card

24.     It was further part of the scheme that, without authorization from the CPRC, MUNOZ used the CPRC debit card to make the following purchases on or about the dates and in the approximate amounts listed below, which purchases were for his own personal use and benefit:

| Date | Amount | Purchase |
| --- | --- | --- |
| November 8, 2018 | $544.98 | Southwest Airlines ticket |
| November 9, 2018 | $169.32 | Los Angeles Kings tickets |
| November 9, 2018 | $291.44 | Los Angeles Crowne Plaza Hotel stay |
| December 9, 2018 | $265.77 | Eddie Vs Restaurant |
| February 12, 2019 | $160.48 | Items purchased from Lover's Lane |

## Fraudulent Use of CPRC Funds

25.     It was further part of the scheme that, in addition to the items referenced above, MUNOZ fraudulently used CPRC funds to pay for, among other things, jewelry; cufflinks; a loan payment on one of MUNOZ's personal vehicles; women's clothing; three Apple iPhones and accessories; aerial sightseeing trips; sports tickets; skydiving excursions; and other entertainment expenses.

11

## MUNOZ Delays Providing Access to And
## Misrepresents the Balance in the CPRC Account

26.     It was further part of the scheme that, for the purpose of concealing and preventing the detection of the scheme, between in or around January 2019 and on or about March 19, 2019, MUNOZ failed to provide access to the CRPC account despite repeated requests from Individual A and Individual B.

27.     It was further part of the scheme that, for the purpose of concealing and preventing the detection of the scheme, on or about March 7, 2019, after Individual B told MUNOZ that the CPRC "is meeting in 20 minutes. I need to know what to tell them," MUNOZ falsely told Individual B in an Apple iMessage that "Bottom line. Progressive Caucus has 11K," referring to $11,000, when MUNOZ knew at the time that the balance in the CPRC account was substantially less than that amount.

28.     It was further part of the scheme that MUNOZ misrepresented, concealed, and hid and caused to be misrepresented, concealed, and hidden, certain material facts, including the acts and purposes of the acts done in furtherance of the scheme.

29.     On or about October 31, 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

### RICARDO MUNOZ,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce, by means of wire communication certain

12

writings, signs, signals, and sounds, namely, an electronic transfer of $16,000 from the CPRC account to the Munoz joint account, that was processed by a Chase Bank server that was located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

13

## COUNT TWO

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.    Paragraphs 1 through 28 of Count One are incorporated here.

2.    On or about January 17, 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

### RICARDO MUNOZ,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, and sounds, namely, an email from Individual C to Individual D in which Individual C informed Individual D that the $16,000 electronic transfer that MUNOZ made from the CPRC account on or about October 31, 2016 did not need to be reported to the SBE on a D-2, which email travelled through a network server that was located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

14

## COUNT THREE

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.     Paragraph 1 of Count One is incorporated here.

2.     On or about October 31, 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

RICARDO MUNOZ,

defendant herein, knowingly engaged in a monetary transaction, namely, the electronic transfer of approximately $15,254 from the Munoz joint account to University E's bank account, which transfer was in and affecting commerce and involving criminally derived property of value greater than $10,000, such property having been derived from a specified unlawful activity, namely wire fraud, in violation of Title 18, United States Code, Section 1343;

In violation of Title 18, United States Code, Section 1957.

## COUNT FOUR

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.     Paragraphs 1 through 28 of Count One are incorporated here.

2.     On or about October 10, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

### RICARDO MUNOZ,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, and sounds, namely, an electronic transfer of $5,000 from the CPRC account to the Munoz personal account, that was processed by a Chase server that was located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

16

## COUNT FIVE

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.  Paragraphs 1 through 28 of Count One are incorporated here.

2.  On or about January 3, 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

RICARDO MUNOZ,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce, by means of wire communication certain writings, signs, signals, and sounds, namely, an email from Individual C to Individual D, which included information that made it falsely appear that Individual A was the intended recipient of an electronic transfer of $5,000 from the CPRC account on or about October 10, 2018, which email traveled through a network server that was located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

17

## COUNT SIX

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.     Paragraphs 1 through 28 of Count One are incorporated here.

2.     On or about January 15, 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

### RICARDO MUNOZ,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, and sounds, namely, the electronic filing of the 1-15-19 CPRC D-2 from Individual D in Rhode Island to the SBE, which falsely stated that the CPRC paid $5,000 to Individual A on or about October 12, 2018 for the purpose of consulting;

In violation of Title 18, United States Code, Section 1343.

18

## COUNT SEVEN

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.    Paragraphs 1 through 28 of Count One are incorporated here.

2.    On or about October 26, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

RICARDO MUNOZ,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce, by means of wire communication certain writings, signs, signals, and sounds, namely, an electronic transfer of $2,300 from the CPRC account to the CFM account, that was processed by a Chase Bank server that was located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## ·COUNT EIGHT

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.     Paragraphs 1 through 28 of Count One are incorporated here.

2.     On or about October 26, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

RICARDO MUNOZ,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce, by means of wire communication certain writings, signs, signals, and sounds, namely, an electronic transfer of $2,300 from the CFM account to the Munoz personal account, that was processed by a Chase Bank server that was located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

20

## COUNT NINE

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.      Paragraphs 1 through 28 of Count One are incorporated here.

2.      On or about October 29, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

RICARDO MUNOZ,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce, by means of wire communication certain writings, signs, signals, and sounds, namely, an electronic transfer of $2,100 from the CPRC account to the Munoz personal account, that was processed by a Chase Bank server that was located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT TEN

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.        Paragraphs 1 through 28 of Count One are incorporated here.

2.        On or about November 8, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

RICARDO MUNOZ,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, and sounds, namely, a debit card charge on the CPRC account in the amount of approximately $544.98, for a ticket on a Southwest Airlines flight from Los Angeles, California to Chicago, Illinois, that was processed by a server that was located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT ELEVEN

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.     Paragraphs 1 through 28 of Count One are incorporated here.

2.     On or about November 24, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

### RICARDO MUNOZ,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce, by means of wire communication certain writings, signs, signals, and sounds, namely, a transaction involving an ATM cash withdrawal of $1,000 in New York, New York from the CPRC account, that was processed by a Chase Bank server that was located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

23

## COUNT TWELVE

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.      Paragraphs 1 through 28 of Count One are incorporated here.

2.      On or about November 25, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

RICARDO MUNOZ,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce, by means of wire communication certain writings, signs, signals, and sounds, namely, a transaction involving an ATM cash withdrawal of $1,000 in New York, New York from the CPRC account, that was processed by a Chase Bank server that was located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT THIRTEEN

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.  Paragraphs 1 through 28 of Count One are incorporated here.

2.  On or about January 15, 2019, at approximately 4:45 p.m., in the Northern District of Illinois, Eastern Division, and elsewhere,

RICARDO MUNOZ,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, and sounds, namely, the 1-15-19 A email from MUNOZ to Individual C in which MUNOZ stated in part that certain funds did not need to be reported to the SBE on a D-2, which email travelled through a network server that was located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

25

## COUNT FOURTEEN

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.     Paragraphs 1 through 28 of Count One are incorporated here.

2.     On or about January 15, 2019, at approximately 5:27 p.m., in the Northern District of Illinois, Eastern Division, and elsewhere,

RICARDO MUNOZ,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, and sounds, namely, the 1-15-19 B email from Individual C to Individual D that forwarded the 1-15-19 A email from MUNOZ to Individual C in which MUNOZ stated in part that certain funds did not need to be reported to the SBE on a D-2, which email travelled through a network server that was located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

26

## COUNT FIFTEEN

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.    Paragraphs 1 through 28 of Count One are incorporated here.

2.    On or about February 12, 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

RICARDO MUNOZ,

defendant herein, for the purpose of executing the scheme knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, and sounds, namely, a debit card charge on the CPRC account in the amount of approximately $160.48, for the purchase of items at Lover's Lane in West Dundee, Illinois, that was processed by a server that was located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

27

## COUNT SIXTEEN

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.      Paragraphs 1 through 28 of Count One are incorporated here.

2.      On or about March 7, 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

### RICARDO MUNOZ,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, and sounds, namely, an Apple iMessage from MUNOZ to Individual B in which MUNOZ falsely represented that the balance of the CPRC account was $11,000, which Apple iMessage travelled through a network server that was located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

28

## FORFEITURE ALLEGATION

The SPECIAL JANUARY 2020 GRAND JURY alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Counts One and Two, and Four through Sixteen of this indictment, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

A TRUE BILL:

_____

FOREPERSON

_____

Signed by Amarjeet S. Bhachu on behalf of the
UNITED STATES ATTORNEY