UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 21-CR-272 |
| | ) | |
| RICARDO MUNOZ | ) | Judge John F. Kness |
| | ) | |

### SENTENCING MEMORANDUM FOR RICARDO MUNOZ

Ricardo Munoz, by and through his attorney Richard as Kling, submits this Memorandum in support of sentencing in which he states:

Undersigned attorney, is confident that this Court is quite familiar with the dictates of *Booker v. Washington* and its progeny, and will not discuss the fact that application of the sentencing guidelines is discretionary rather than mandatory.

Further, we will not discuss nor dispute the particular facts or conduct which caused Mr. Munoz to be charged in the case before this court; suffice it to say, sometimes inherently good people do inherently stupid things, and in the case before this Court, as in so many other criminal cases, the stupid behavior that Mr. Munoz engaged ended up having the criminal consequences which both he and this Court must confront.

Further, as the Government recognizes on page 20 of their Sentencing Memorandum, Rick Munoz "grew up in a supportive family with hard-working parents and siblings, one of whom described him as a pillar of support (PSR para. 47). Moreover, as the Government and the PSR recognize, and which this Court has dealt with on other occasions, Mr. Munoz "…has struggled with substance abuse issues and was going through a divorce during part of the charged conduct, which is still ongoing. (Id, *para* 51, 64.) With that in mind, the balance of this memorandum will

1

discuss the applicability of the factors which this court is required to consider under Title 18, § 3553.

Under § 3553, the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of this subsection. The Court, in determining the particular sentence to be imposed, shall consider:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;
2. The need for the sentence imposed:
   a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b. to afford adequate deterrence to criminal conduct;
   c. to protect the public from further crimes of the defendant; and
   d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

## I: THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Mr. Munoz does not disagree with the "nature and circumstances of the offense" set forth in the Government's Sentencing Memorandum. Although Mr. Munoz didn't try to bribe government officials to get lucrative contracts, or try to buy a Senate seat, he recognizes and acknowledges that he abused his position of trust, that his behavior was nonetheless illegal and violated his obligations and responsibilities to the community that entrusted him with the position he held. For that behavior, he accepts full responsibility.

As for the history and characteristics of the defendant, in addition to the personal history contained in the pre-sentence report, the mitigation is extensive.

In 1983, Ricardo Munoz graduated from Holy Name Cathedral High School, ranked in the top 10 of his classmates. In 1986, Ricardo was elected president of Northern Illinois University's Organization of Latino Students.

Ricardo's journey into the political world began with Mayor Eugene Sawyer, with whom Ricardo worked as the legislative liaison for the mayor's office of inter-governmental affairs. Shortly thereafter, Ricardo begin working as the chief of staff for the then 22nd Ward Alderman Jesus Garcia, whose campaigns for alderman, and then state Senate, Rick managed.

Ricardo Munoz was appointed alderman of the 22nd Ward in January 1993, in a 1995 he was elected alderman of that ward. From 1993 to 1997 Rick managed and led an advocacy campaign that led to the building of five new elementary schools in Little Village, each costing approximately $20 million, to relieve overcrowding in existing schools.

In 1995, Ricardo Munoz lead and introduced municipal legislation to establish a living wage in Chicago increasing the income of minimum wage earners, which passed in July 1998.

From 1997 to 2003, Ricardo Munoz managed and led a successful campaign to build a new high school at 31st and Kostner. Construction began in 2001, after a community hunger strike garnered national attention, and eventually resulted in the construction of a new 300,000 square-foot high school for 1600 students.

From 1995 to 2019, Ricardo was a board member of the Pilsen Little Village YMCA and helped conduct fundraisers for annual expenses and capital campaign funds that led to the building of a 16,000 square-foot facility with indoor soccer field and daycare, now known as Rauner YMCA.

From 1996 to 2010, Ricardo Munoz was a board member and coach of the Little Village Baseball League. He fundraised, organized and coached 12 to 18 teams for the 5 to 12-year-old baseball league.

From 1996 to 2004, Mr. Munoz was a board member of the National Association of Latino Elected Officials (NALEO) with whom he raised funds and directed citizenship drives and trainings for youth and newly elected officials.

From 1999 to 2000, Mr. Munoz directed "New Homes for Chicago", a campaign to build 50 new homes in the Little Village area for low to moderate income residents.

From 1993 to 2016, Mr. Munoz established a "dry" ordinance in the 22nd ward which prevented any new taverns from opening up. That action result in a reduction of "problem bars" in the neighborhood from roughly 60 to 7 in that timeframe.

During his tenure as alderman he also participated in organizing and effectuating projects for a new library and fire station at 23rd and Kedzie, a new police station at Ogden and Homan, a new library at 27th and Pulaski, Carlos Cantu Daycare Center, Piotrowski Park improvements including the conversion of an outdoor pool to indoors, night lights for baseball and soccer evening leagues, a new skating park, and improvement of a weight room and fitness center in the Little Village area.

From 1997 to 2010, Mr. Munoz performed the duties of usher at Saint Agnes Church for the 10:30 a.m. mass where he would greet for parishioners, assist people with disabilities, etc.

Mr. Munoz also lead a team in the formation of the Little Village Community Development Commission (LVCDC) which later became ENLACE, the leading not for profit social service agency in the Little Village community.

The above is just representative of the contributions that Mr. Munoz provided his community. The list of awards, commendations, letters of appreciation, videos, photos goes on for scores of pages.

**II: <u>THE NEED FOR THE SENTENCE IMPOSED</u>**

In addition to the nature and circumstances of the offense, and characteristics of the defendant, the sentence imposed must consider the need for the sentence:

**a) <u>To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense</u>**

Mr. Munoz's behavior was illegal, plain and simple, although if there were some type of hypothetical scale to measure egregiousness, arguably the behavior in this case does not rise (or sink) to the level of trying to buy a Senate seat, or bribe officials to get lucrative contracts, or shake down hospitals in order to get campaign contributions.

Mr. Munoz, now stands before this Court as a convicted felon. That he is a convicted felon, certainly reflects the "seriousness of the offense," a status that will follow him forever. Moreover, in addition to whatever actual sentence this Court imposes, the myriad of collateral consequences of being a convicted felon is a lifetime sentence, which should also be considered when determining "just punishment".

**b) <u>To Afford Adequate Deterrence to Criminal Conduct</u>**

The Government talks about the issue of deterrence, both generally, and specifically as to Mr. Munoz. Quite frankly, the debate about the general deterrence or lack of deterrence value of custodial sentences, other than the actual deterrence of the defendant who is locked up, could go on forever. Yes, as the Government comments extensively on pages 21 to 23 of their Sentencing Memorandum, courts across the country do talk about the deterrent value of sentences in "these types of cases," (white collar and political corruption cases). And yet, at the same time that courts talk about the deterrence value in "these types of cases", the courts see governor after governor, legislator after legislator, alderman after alderman, county board member after board member,

continuing to engage in the same behavior as to which they were supposed to be deterred. Most likely, because the universal belief or hope is "I won't get caught."

In any event, Mr. Munoz did get "caught," and as to him, the personal deterrence value of any sentence this Court imposes is unimaginably high. For the approximately $37,000 he used for personal expenses, most of which has been or will be paid back by the time of sentencing, he is stripped of his office, his otherwise valued reputation, as mentioned above a myriad of collateral consequences, not to mention whatever sentence this Court sees fit to impose.

### c) To Protect the Public from Further Crimes of the Defendant

Regardless of the sentence this court imposes, the public doesn't need protection from further crimes of the defendant. He no longer holds office, can no longer hold office, and he's no longer in any position nor does he expect to be in any position where he could commit crimes from which the public needs protection.

### d) To Provide the Defendant with Needed Educational of Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

Mr. Munoz is already educated, and was leading a successful career. The only possible area that a correctional facility might be of help is in connection with some medical issues of which this Court has been previously made aware, but as to which Mr. Munoz has undertaken his own course of action.

### CONCLUSION

The only real purpose that any incarceration would serve in this case, over and above the punishment that Ricardo Munoz has inflicted upon himself is actual punishment, and obviously if the Court feels that that is appropriate, then that is what the Court will impose. As discussed above, however, the seriousness of the offense has been taken into consideration by this court and Mr. Munoz; he is now a convicted felon. Whether the possibility of a felony conviction really will

deter others who might engage in the type of conduct of which Mr. Munoz was convicted, and thereby protect the public, is probably a discussion best left to pundits and soothsayers, though it certainly is a personal deterrent to Ricardo Munoz.

Finally, it must be asked whether an already overburdened criminal justice system should spend the time, money, and other resources necessary to "house" someone who is not a danger to the community and who is fully capable of housing himself at his own expense and and not on the taxpayers' budget.

Although the Government's proposed "year and one day" sentence is well within the 10-16 months Guidelines recommendation, this was not a crime of violence, complete restitution is or will be completed shortly, and as respectfully submitted that a Guidelines Zone C split sentence might be the most appropriate sentence to impose.

The application notes to the sentencing guidelines provide, inter alia:

d) If the applicable guideline range is in Zone C of the Sentencing Table, the minimum term may be satisfied by:
   1. a sentence of imprisonment; or
   2. a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment.
e) Schedule of Substitute Punishments:
   1. One day of intermittent confinement in prison or jail for one day of imprisonment (each 24 hours of confinement is credited as one day of intermittent confinement, provided, however, that one day shall be credited for any calendar day during which the defendant is employed in the community and confined during all remaining hours);
   2. One day of community confinement (residence in a community treatment center, halfway house, or similar residential facility) for one day of imprisonment;
   3. One day of home detention for one day of imprisonment.

As a condition of imposing a split sentence under Zone C, this Court could require a significant amount of community service, which could save the taxpayers money, at the same time

impose a significant penalty on Mr. Munoz, and serve the needs of the community by requiring him to give service back to the community that he previously served so well.

It is respectfully submitted that a Zone C split sentence, followed by a term of supervised release, would be a "sentence sufficient, but not greater than necessary, to comply with the purposes set forth…" in § 3553.

Respectfully submitted:

s/Richard S. Kling
Attorney for Defendant Ricardo Munoz

Richard S. Kling
Attorney for Defendant
Law Offices at Chicago-Kent College of Law
565 West Adams Street, Suite 600
Chicago, IL 60661-3691
(312) 906-5075

## CERTIFICATE OF SERVICE

The undersigned, Richard S. Kling, an attorney, hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, L.R. 5.5, and the General Order on Electronic Case Filing (ECF), the following document:

**SENTENCING MEMORANDUM FOR RICARDO MUNOZ**

was served pursuant to the district court's ECF system as to ECF filings, if any, and was sent by first-class mail/hand delivery on January 18, 2022, to counsel/parties that are non-ECF filers.

By: /s/ *Richard S. Kling*
RICHARD S. KLING
Chicago-Kent College of Law
Illinois Institute of Technology
565 West Adams Street, Suite 600
Chicago, Illinois 60661
(312) 906-5075
rkling@kentlaw.edu